# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRITTANY COVELL,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>NINE WEST HOLDINGS, INC., a Delaware Corporation; DOES 1–50,<br><br>　　　　　　　　　　Defendants. | Case No.: 3:17-cv-01371-H-JLB<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**<br><br>[Doc. No. 13.] |

On October 31, 2017, Plaintiff Brittany Covell ("Plaintiff") filed a First Amended Complaint ("FAC") alleging three statutory causes of action for violations of California's Unfair Competition Law, Bus. & Prof. Code § 17200 et seq., False Advertising Law, Bus. & Prof. Code § 17500 et seq., and Consumer Legal Remedies Act, Civil Code § 1750 et seq., against Defendant Nine West Holdings, Inc. ("Nine West"). (Doc. No. 10, First Amended Complaint.) On December 11, 2017, Nine West moved to dismiss the FAC for failure to state a claim. (Doc. No. 13.) See Fed. R. Civ. P. 12(b)(6). On January 15, 2018, Plaintiff filed an opposition to Nine West's motion. (Doc. No. 16.) On January 19, 2018, the Court took the motion under submission. (Doc. No. 21.) Nine West filed a reply on January 22, 2018. (Doc. No. 22.)

For the reasons articulated below, the Court denies the motion, but cautions Plaintiff

that the issues are better suited for summary judgment when the record is more fully developed. The court also notes the absence of published Ninth Circuit authority on certain issues.

## Background

This class action arises out of Plaintiff Brittany Covell's purchase of a pair of Stefao snakeskin printed, pointed-toe high heeled shoes ("the Heels") at a Nine West outlet store in San Diego, California, on April 16, 2016. (Doc. No. 10 at ¶ 13.) When Plaintiff observed the Heels in Nine West's store, a "price tag advertised that the heels had a 'SUGG. RETAIL' price of $89.00 and an 'OUR PRICE' price of $44.50." (Id.) "Plaintiff believed she was receiving a significant discount—specifically, Plaintiff believed the heels she was purchasing were recently offered for sale at the Nine West Outlet store and/or retail store for the advertised 'SUGG. RETAIL' price of $89.00." (Id. at ¶ 14.) However, Plaintiff alleges that Nine West never offered the Heels "for sale anywhere at the 'SUGG. RETAIL' price." (Id. at ¶ 27.)

Plaintiff brought this class action on behalf of all Nine West customers who have bought merchandise with a price tag that compared the item's "SUGG. RETAIL" price to its "OUR PRICE" price (Nine West's "price tags" or "price markings"). Plaintiff asserts claims under California's Unfair Competition Law, Bus. & Prof. Code § 17200 et seq., False Advertising Law, Bus. & Prof. Code § 17500 et seq., and Consumer Legal Remedies Act, Civil Code § 1750 et seq.

## Discussion

**I.     Legal Standards**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint if the plaintiff has failed to state a claim upon which relief can be granted. See Conservation Force v. Salazar, 646 F.3d 1240, 1241 (9th Cir. 2011). The parties agree that Federal Rule of Civil Procedure 9(b)'s particularity standard governs each of Plaintiff's claims.

The Ninth Circuit has explained that:

> Under Rule 9(b), a plaintiff must state with particularity the circumstances constituting fraud. This means the plaintiff must allege the who, what, when, where, and how of the misconduct charged, including what is false or misleading about a statement, and why it is false. Knowledge, however, may be pled generally.
>
> Under [Ninth Circuit] case law, Rule 9(b) serves two principal purposes. First, allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong. Thus, perhaps the most basic consideration for a federal court in making a judgment as to the sufficiency of a pleading for purposes of Rule 9(b) is the determination of how much detail is necessary to give adequate notice to an adverse party and enable that party to prepare a responsive pleading.
>
> Second, the rule serves to deter the filing of complaints as a pretext for the discovery of unknown wrongs, to protect defendants from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis. By requiring some factual basis for the claims, the rule protects against false or unsubstantiated charges.
>
> Consistent with these requirements, mere conclusory allegations of fraud are insufficient. Broad allegations that include no particularized supporting detail do not suffice, but statements of the time, place and nature of the alleged fraudulent activities are sufficient. Because this standard does not require absolute particularity or a recital of the evidence, a complaint need not allege a precise time frame, describe in detail a single specific transaction or identify the precise method used to carry out the fraud.

United States v. United Healthcare Ins. Co., 848 F.3d 1161, 1180 (9th Cir. 2016) (citations, quotation marks, alterations and footnote omitted).

In reviewing a Rule 12(b)(6) motion to dismiss, a district court must accept as true all facts alleged in the complaint, and draw all reasonable inferences in favor of the plaintiff. See Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am., 768 F.3d 938, 945 (9th Cir. 2014). But a court need not accept "legal conclusions" as true. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Further, it is improper for a court to assume the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983). In addition, a court may consider documents incorporated into the complaint by reference and items that are proper subjects of judicial notice. See Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010).

If the court dismisses a complaint for failure to state a claim, it must then determine whether to grant leave to amend. See Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995). "'A district court may deny a plaintiff leave to amend if it determines that 'allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency,' or if the plaintiff had several opportunities to amend its complaint and repeatedly failed to cure deficiencies." Telesaurus VPC, LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010) (internal quotation marks and citations omitted).

## II. Analysis

Plaintiff's FAC asserts violations of California's Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200 et seq., False Advertising Law ("FAL"), Bus. & Prof. Code § 17500 et seq., and Consumer Legal Remedies Act ("CLRA"), Civil Code § 1750 et seq. (Doc. No. 10.) These claims are governed by California law. The Ninth Circuit has explained that:

> "The task of a federal court in a diversity action is to approximate state law as closely as possible in order to make sure that the vindication of the state right is without discrimination because of the federal forum." Gee v. Tenneco, Inc., 615 F.2d 857, 861 (9th Cir. 1980); accord U.S. Fidelity and Guaranty Co. v. Lee Investments LLC, 641 F.3d 1126, 1133 (9th Cir. 2011) ("Perhaps a better way of putting it is to say that one of the goals in deciding state law questions is to do no harm to state jurisprudence."). "[F]ederal courts are bound by the pronouncements of the state's highest court on applicable state law." Ticknor v. Choice Hotels, Inc., 265 F.3d 931, 939 (9th Cir. 2001). Similarly, a federal court is "not free to reject a state judicial rule of law merely because it has not received the sanction of the state's highest court, but it must ascertain from all available data what the state law is and apply it." Estrella v. Brandt, 682 F.2d 814, 817 (9th Cir. 1982). "An intermediate state appellate court decision is a 'datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" Id. at 817 (quoting West v. A.T.&T. Co., 311 U.S. 223, 237 (1940)); see also Lewis v. Tel. Empl. Credit Union, 87 F.3d 1537, 1546 (9th Cir. 1996) (citing In re Kirkland, 915 F.2d 1236, 1239 (9th Cir. 1990) to recognize that ". . . where there is no convincing evidence that the state supreme court would decide differently, 'a federal court is obligated to follow the decisions of the state's intermediate appellate courts'").

Kwan v. SanMedica Int'l, 854 F.3d 1088, 1093 (9th Cir. 2017); accord Pulte Home Corp. v. Am. Safety Indem. Co., 264 F. Supp. 3d 1073, 1077–78 (S.D. Cal. 2017).

The UCL prohibits business practices that constitute "unfair competition," which includes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive,

untrue or misleading advertising and any act prohibited by" the FAL. Cal. Bus. & Prof. Code § 17200. "Because the statute is written in the disjunctive, it is violated where a defendant's acts or practice is (1) unlawful, (2) unfair, (3) fraudulent, or (4) in violation of section 17500 (false or misleading advertisements)." Lozano v. AT&T Wireless Services, Inc., 504 F.3d 718, 731 (9th Cir. 2007). In order to have statutory standing to bring claims under the UCL, the plaintiff must have "suffered injury in fact and ha[ve] lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204.

The FAL provides in relevant part that no "price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price . . . within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement." Cal. Bus. & Prof. Code § 17501. The FAL has the same statutory standing requirements as the UCL. See Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, 321–22 (2011).

Finally, the CLRA forbids, among other things, "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." Cal. Civil Code § 1770(a)(13). A plaintiff has statutory standing to bring CLRA claims if she has suffered "any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by [the CLRA]." Id. § 1780(a).

Nine West argues that each of Plaintiff's claims either do not state a plausible theory for relief, or else suffer from fatal legal defects. (Doc. No. 13-1.) The core of Nine West's argument is that the FAC fails to plead how any reasonable consumer would be misled by its price markings into thinking that the "SUGG. PRICE" was a formerly offered price. (Id. at 12–13.) Plaintiff counters by pointing to several district court orders that have upheld similar complaints in recent years. (Doc. No. 16.)[1] The Court evaluates each of

---

[1] Other Circuits have rejected similar suits for valid reasons in published opinions. See, e.g., Gerboc v. ContextLogic, Inc., 867 F.3d 675, 679 (6th Cir. 2017) (affirming dismissal of claims where defendant's website listed an item's price next an allegedly deceptive strikethrough price, and observing that "as with

5

the issues raised by the parties in turn.

**A.  Failure to Explain How Nine West's Price Tags Were False or Misleading**

Nine West first argues that Plaintiff's claims are not pled with particularity as required by Rule 9(b).  (Doc. No. 13-1 at 4–8.)  Specifically, Nine West argues that: (i) the FAC fails to plead "facts explaining why a reasonable consumer would understand a 'SUGG. RETAIL' price to be a former price," (id. at 6 (emphasis in original)); and (ii) "even if the 'SUGG. RETAIL' price could reasonably understood as a statement of an item's former price, [the FAC] fails to allege any facts showing that [any] former price representation was false."  (Id. at 7.)  Nine West thus argues that the FAC fails to show "what is false or misleading about the [price tags], and why [they are] false." Cafasso ex rel. United States v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011).

As Plaintiff points out, the FAC alleges that:

> A product's 'regular,' 'original,' or 'market' price matters to consumers because it serves as a baseline upon which consumers perceive a product's value.  In this case, Nine West has marked its merchandise with a 'SUGG. RETAIL' price, which it intends to be the equivalent of a "regular,' 'original,' or 'market' price.  The 'SUGG. RETAIL' price conveys to consumers, including Plaintiff, the product's worth and the prestige that ownership of the product conveys.  By creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product.  Empirical studies indicate that as discount size increases, consumers' perceptions of value and their willingness to buy the product increase, while their intention to search for a lower price decreases.

(Doc. No. 10 at ¶ 29 (citations, brackets and internal quotation marks omitted).)

Of course, it is fair to question whether a reasonable consumer would actually be misled by Nine West's price tags, as required by California law.  See Freeman v. Time, Inc., 68 F.3d 285, 289 (9th Cir. 1995) ("[T]he false or misleading advertising and unfair business practices claim must be evaluated from the vantage of a reasonable consumer."); Lavie v. Procter & Gamble Co., 105 Cal. App. 4th 496, 506–07 (2003) ("[U]nless the

---

any normal sale of a good, there was nothing 'unjust' about" the price markings because the plaintiff "got what he paid for"); Shaulis v. Nordstrom, Inc., 865 F.3d 1, 11 (1st Cir. 2017) (holding that plaintiff suffered no legally cognizable injury from price markings that contained allegedly fictitious "Compare to" price juxtaposed with actual price).

advertisement targets a particular disadvantaged or vulnerable group, it is judged by the effect it would have on a reasonable consumer."). On this all-important question, the Court agrees with Nine West that there are good reasons to be skeptical of Plaintiff's claims. (See Doc. No. 13-1 at 12–14.) But the question of "whether a business practice is deceptive will usually be a question of fact not appropriate for decision on [a motion to dismiss]." Williams v. Gerber Prods. Co., 552 F.3d 934, 938 (9th Cir. 2008) (collecting cases). It is enough for now that Plaintiff has adequately pled a plausible theory of why Nine West's price tags might be misleading—whether they actually are misleading is a matter for another day.

Moreover, the FAC asserts specific facts that the Court is required to accept in ruling on a motion to dismiss. For example, the FAC alleges that "at no time [was] the Nine West outlet store merchandise ever offered for sale anywhere at the 'SUGG. RETAIL' price. The 'SUGG. RETAIL' price is merely a false reference price, which Nine West utilizes to deceptively manufacture a deeply discounted price referred to as the 'OUR PRICE' price on the merchandise sold at the Nine West outlet stores during the class period." (Doc. No. 10 at ¶ 27.) Nine West attacks this allegation as conclusory, but Rule 9(b) is "relaxed as to matters within the opposing party's knowledge." Moore v. Kayport Package Express, Inc., 885 F.2d 531, 540 (9th Cir. 1989). Here, the particular facts as to whether the SUGG. RETAIL prices are fictitious are likely only known to Nine West. Without an opportunity to conduct any discovery, Plaintiff cannot reasonably be expected to have detailed personal knowledge of Nine West's internal pricing policies.[2] As a result, the Court declines to dismiss the FAC on Rule 9(b) grounds.

### B. Statutory Standing

Nine West next argues that Plaintiff lacks statutory standing to press her claims in two respects. First, Nine West argues that "Plaintiff lacks statutory standing to raise UCL,

---

[2] Because Plaintiff has adequately pled claims based on affirmative misrepresentations, the Court will not address Plaintiff's alternative argument that the FAC adequately pleads an omissions-based fraud theory.

7

FAL, and CLRA claims concerning her purchase of the Heels, because she has failed to plead the existence of any injury caused by Nine West's pricing practices." (Doc. No. 13-1 at 10 (emphasis omitted).) Second, Nine West argues that Plaintiff lacks statutory standing to pursue claims related to the pricing of products that she did not buy. (Id. at 11.)

The Court rejects both of Nine West's arguments. In Hinojos v. Kohl's Corp., the Ninth Circuit held that "when a consumer purchases merchandise on the basis of false price information, and when the consumer alleges that he would not have made the purchase but for the misrepresentation, he has standing to sue under the UCL and FAL because he has suffered an economic injury." 718 F.3d 1098, 1107 (9th Cir. 2013); see also id. at 1108 ("[W]e conclude that any plaintiff who has standing under the UCL's and FAL's 'lost money or property' requirement will, a fortiori, have suffered 'any damages' for purposes of establishing CLRA standing."). Hinojos specifically held that consumers may establish statutory standing under the UCL, FAL, and CLRA by alleging that they purchased an item based on price markings that misled them into believing they were getting a bargain, when in fact they were paying an item's normal or usual price. Id. at 1106 (holding that a "deceived bargain hunter suffers" from an "obvious economic injury as a result of false advertising . . . because the bargain hunter's expectations about the product he just purchased is precisely that it has a higher perceived value and therefore has a higher resale value."). Tracking Hinojos, the FAC alleges that Plaintiff: (i) only purchased the Heels because she "believed she was receiving a significant discount;" (ii) did not in fact receive a discount; and (iii) would not have purchased the Heels but for Nine West's allegedly deceptive price tags. (Doc. No. 10 at ¶¶ 14–15.) Plaintiff therefore has statutory standing to assert her personal claims.

As to Plaintiff's standing to assert claims related to items that she did not buy, the Court notes that the FAC's allegations go beyond the price tags on the Heels Plaintiff purchased. Plaintiff's FAC challenges Nine West's alleged fraudulent scheme of using misleading price tags at Nine West's outlet stores, and is not limited to the price markings on any one item. (See Doc. No. 10 at ¶ 26 ("Nine West engages in a scheme to defraud its

8

3:17-cv-01371-H-JLB

FAL, and CLRA claims concerning her purchase of the Heels, because she has failed to plead the existence of any injury caused by Nine West's pricing practices." (Doc. No. 13-1 at 10 (emphasis omitted).) Second, Nine West argues that Plaintiff lacks statutory standing to pursue claims related to the pricing of products that she did not buy. (Id. at 11.)

The Court rejects both of Nine West's arguments. In Hinojos v. Kohl's Corp., the Ninth Circuit held that "when a consumer purchases merchandise on the basis of false price information, and when the consumer alleges that he would not have made the purchase but for the misrepresentation, he has standing to sue under the UCL and FAL because he has suffered an economic injury." 718 F.3d 1098, 1107 (9th Cir. 2013); see also id. at 1108 ("[W]e conclude that any plaintiff who has standing under the UCL's and FAL's 'lost money or property' requirement will, a fortiori, have suffered 'any damages' for purposes of establishing CLRA standing."). Hinojos specifically held that consumers may establish statutory standing under the UCL, FAL, and CLRA by alleging that they purchased an item based on price markings that misled them into believing they were getting a bargain, when in fact they were paying an item's normal or usual price. Id. at 1106 (holding that a "deceived bargain hunter suffers" from an "obvious economic injury as a result of false advertising . . . because the bargain hunter's expectations about the product he just purchased is precisely that it has a higher perceived value and therefore has a higher resale value."). Tracking Hinojos, the FAC alleges that Plaintiff: (i) only purchased the Heels because she "believed she was receiving a significant discount;" (ii) did not in fact receive a discount; and (iii) would not have purchased the Heels but for Nine West's allegedly deceptive price tags. (Doc. No. 10 at ¶¶ 14–15.) Plaintiff therefore has statutory standing to assert her personal claims.

As to Plaintiff's standing to assert claims related to items that she did not buy, the Court notes that the FAC's allegations go beyond the price tags on the Heels Plaintiff purchased. Plaintiff's FAC challenges Nine West's alleged fraudulent scheme of using misleading price tags at Nine West's outlet stores, and is not limited to the price markings on any one item. (See Doc. No. 10 at ¶ 26 ("Nine West engages in a scheme to defraud its

customers by . . . advertis[ing] its merchandise with a regular 'SUGG. RETAIL' price and a corresponding 'OUR PRICE' sale price.").) The district courts in this Circuit are divided as to whether plaintiffs have statutory standing under the UCL, FAL, and CLRA to assert claims for deceptive advertising related to items that they did not purchase. Compare Chester v. TJX Cos., Inc., No. 5:15-cv-01437-ODW (DTB), 2016 WL 4414768, at *7 (C.D. Cal. Aug. 18, 2016) (concluding that class plaintiffs in UCL, FAL and CLRA cases have standing challenge deceptive pricing schemes as applied to items that the plaintiff did not purchase, as long as the plaintiff purchased at least one item with the challenged deceptive price markings); Chase v. Hobby Lobby Stores, Inc., No. 17-cv-00881-GPC-BLM, 2017 WL 4358146, at *7 (S.D. Cal. Oct. 2, 2017) ("[T]he Court concludes that Plaintiff has standing on behalf of others who purchased Hobby Lobby products who were similarly misled by Hobby Lobby's in-store advertisements."); Azimpour v. Sears, Roebuck & Co., No. 15-CV-2798 JLS (WVG), 2017 WL 1496255, at *5 (S.D. Cal. Apr. 26, 2017) ("The Court finds . . . that Plaintiff has standing to sue on behalf of purchasers of other Sears items bearing in-store price tags similar to those relied upon by Plaintiff because he is challenging the pricing scheme, not the product."); and Branca v. Nordstrom, Inc., No. 14cv2062-MMA (JMA), 2015 WL 10436858, at *5 (S.D. Cal. Oct. 9, 2015) ("[T]he Court finds that Plaintiff has standing to sue on behalf of purchasers of other Nordstrom Rack items with 'Compare At' tags because he is challenging the same basic mislabeling practice across products." (citation omitted)); with Granfield v. Nvidia Corp., No. C-11-0504JW, 2012 WL 2847575, at *6 (N.D. Cal. July 11, 2012) ("Accordingly, when a plaintiff asserts claims based both on products that she purchased and products that she did not purchase, claims relating to products not purchased must be dismissed for lack of standing."); Carrea v. Dreyer's Grand Ice Cream, Inc., No. C 10-01044 JSW, 2011 WL 159380, at *3 (N.D. Cal. Jan. 10, 2011) (finding no standing to bring claim for Dreyer's Dibs ice cream product where plaintiff only purchased Dreyer's Drumsticks, but not Dreyer's Dibs); Johns v. Bayer Corp., 2010 WL 476688, at *5 (S.D. Cal. Feb. 9, 2010) (Plaintiff "cannot expand the scope of his claims to include a product he did not purchase

9

or advertisements relating to a product that he did not rely upon[.]"). Since the FAC alleges a store-wide false advertising scheme, the Court permits the case to proceed, but reserves the right to address Plaintiff's standing to assert claims related to the pricing of items she did not purchase at a later time, or if the Ninth Circuit or the California Supreme Court issues published authority on the issue.

### C. Pleading Defects in UCL Claims

#### 1. Unlawful Conduct Prong

"By proscribing any unlawful business practice, [the UCL] borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." Alvarez v. Chevron Corp., 656 F.3d 925, 933 n.8 (9th Cir. 2011). "Virtually any law—federal, state or local—can serve as a predicate action under [the UCL]." Smith v. State Farm Mut. Auto. Ins. Co., 93 Cal. App. 4th 700, 718 (2001). Nine West argues that the FAC fails to plead that Nine West's price markings violate any predicate law—and thus fails to state a UCL claim—because no reasonable consumer could construe Nine West's price markings "as a former price comparison." (Doc. No. 13-1 at 15 (emphasis omitted).)

As the Court has already explained, the FAC alleges that a reasonable consumer could be misled by Nine West's price markings into thinking she was paying a discounted price for a product, when in fact she was paying the product's normal or usual price. The FAC pleads a violation of the FAL, see Cal. Bus. & Prof. Code § 17501, and by extension, a violation of the UCL. See Kasky v. Nike, Inc., 27 Cal.4th 939, 950 (2002) ("[A]ny violation of the false advertising law . . . necessarily violates the UCL."); In re Ferrero Litig., 794 F. Supp. 2d 1007, 1116–17 (S.D. Cal. 2011) (Huff, J.) (UCL claim adequately pled where FAL claim also pled).

#### 2. Unfair Conduct Prong

In addition to providing a private cause of action to combat unlawful business practices, the UCL also prohibits any business practice that "violates established public policy or . . . is immoral, unethical, oppressive or unscrupulous and causes injury to

consumers which outweighs its benefits." McKell v. Wash. Mut., Inc., 142 Cal. App. 4th 1457, 1473 (2006). In a UCL action brought by a consumer, a business practice is unfair if: (i) it causes "substantial" consumer injury, and the consumer injury "is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided," Berryman v. Merit Prop. Mgmt., Inc., 152 Cal. App. 4th 1544, 1555 (2007); or (ii) it violates a "legislatively declared policy or" has "some actual or threatened impact on competition," Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 186 (1999). See Lozano, 504 F.3d at 735–36. The first test is often referred to as the "balancing test," and the second test is often referred to as the "tethering test." See, e.g., Hadley v. Kellogg Sales Co., 243 F. Supp. 3d 1074, 1104 (N.D. Cal. 2017).

Nine West argues that the FAC fails to state an unfair practices UCL claim under the balancing or tethering tests. With respect to the balancing test, Nine West argues that the FAC fails to "allege any concrete, measure harm that [Plaintiff] sustained because of the 'SUGG. RETAIL' / 'OUR PRICE' price tag." (Doc. No. 13-1 at 16.) With respect to the tethering test, Nine West argues because Plaintiff cannot state a claim under the UCL's unlawful practices prong, she necessarily cannot state a claim under the unfair practices prong. (Id. at 16–17.)

The injury asserted by Plaintiff in the FAC is directly analogous to the injury the Ninth Circuit recognized in Hinojos, and the Court is bound to follow the Ninth Circuit's decision. See Hinojos, 718 F.3d at 1107. And Plaintiff has adequately pled that this injury is not outweighed by any countervailing benefits. (Doc. No. 10 at ¶¶ 53–55.) Nine West argues that consumers benefit from being able to compare an item's price to its manufactured value, (Doc. No. 13-1 at 16), but Plaintiff alleges that the "SUGG. RETAIL" price is entirely fabricated. (Doc. No. 10 at ¶ 27.) The Court therefore concludes that the FAC adequately pleads an unfair practices claim under the UCL.

### D. Pleading Defects in CLRA Claim

Relevant here, the CLRA prohibits "[a]dvertising goods or services with intent not

to sell them as advertised," Cal. Civ. Code § 1770(a)(9), and "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." Id. § 1770(a)(13). Nine West argues that the FAC fails to state a claim under § 1770(a)(9) because "there are no claims that Nine West changed any representation made to Plaintiff, sold Plaintiff a different product than she thought she was getting, or required Plaintiff to pay a higher price than she had previously been quoted[.]" (Doc. No. 13-1 at 17.) Nine West argues that the FAC fails to state a claim under § 1770(a)(13) because no reasonable consumer could construe its "SUGG. PRICE" representations as former price representations. (Id. at 18.)

The Court has already concluded that the FAC alleges a theory articulating how a reasonable consumer could be misled by Nine West's price markings. The Court therefore concludes that the FAC states a CLRA claim premised on a violation of § 1770(a)(13). The Court declines to address whether the FAC could independently state a CLRA claim premised on a violation of § 1770(a)(9).

### E. Standing to Seek Equitable Relief

Finally, Nine West asks the Court to dismiss Plaintiff's request for equitable relief. (Doc. No. 13-1 at 18–19.) Because a "UCL action is equitable in nature[,] damages cannot be recovered." Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1144 (2003). Instead, "[p]revailing plaintiffs are generally limited to injunctive relief and restitution." Cel-Tech, 20 Cal. 4th at 179. In order to have standing to seek equitable relief, a plaintiff must lack any adequate remedies at law. See, e.g., McAdam v. State Nat. Ins. Co., Inc., No. 12cv1333 BTM(MDD), 2012 WL 4364655, at *2 (S.D. Cal. Sept. 24, 2012) ("Injunctive relief under [the UCL] is not available if the plaintiff has other adequate legal remedies."). However, the CLRA provides for actual and punitive damages. See Cal. Civil Code § 1780(a)(1), (4). Nine West thus argues that since Plaintiff has an adequate remedy at law—damages under the CLRA—she lacks standing to obtain injunctive relief. (Doc. No. 13-1 at 18–19.)

As Plaintiff points out, Nine West's argument is foreclosed by the UCL itself.

Section 17205 of the Business and Professions Code states that unless "otherwise expressly provided, the remedies or penalties provided by [the UCL] are cumulative to each other and to the remedies or penalties available under all other laws of [California]." See also Cortez v. Purolator Air Filtration Prod. Co., 23 Cal. 4th 163, 179 (2000) ("UCL remedies are cumulative to remedies available under other laws (§ 17205) and, as section 17203 indicates, have an independent purpose—deterrence of and restitution for unfair business practices."). Put simply, a plaintiff seeking damages is not automatically precluded from obtaining UCL relief. See Cabrales v. Castle & Cooke Mortg., LLC, No. 1:14–cv–01138–MCE–JLT, 2015 WL 3731552, at *4 (E.D. Cal. June 12, 2015) ("Castle's claim that the presence of legal claims in the FAC dooms Plaintiff's UCL claims from their onset, however, is incorrect . . . the UCL on its face makes it plain that resort to its remedies does not preclude other avenues of relief."). As one district court helpfully explained in confronting a similar argument:

> "Thus, for example, a plaintiff could bring a lawsuit alleging consumer fraud with . . . a separate UCL claim seeking an injunction against the allegedly unlawful activity and the restitution of ill-gotten gains on behalf of the general public." Ramirez v. Labor Ready, Inc., 2002 WL 1997037, *11 (Cal. Super. Ct. 2002). This is because "the UCL is not simply a legislative conversion of a legal right into an equitable one. It is a separate equitable cause of action." Hodge, 145 Cal. App. 4th at 284. In other words, plaintiffs may seek injunctive and/or restitutionary equitable relief separate and apart from the same underlying claims (i.e., attorney malpractice, breach of fiduciary duty, and fraud) in which plaintiffs seek monetary damages. See Stern, Bus & Prof. C. § 17200 Practice at § 5:86, 5–41 ("§ 17200 is a broad remedial statute designed to supplement rather than supplant other pro-consumer laws.").

Estakhrian v. Obenstine, 233 F. Supp. 3d 824, 846 (C.D. Cal. 2017).

If Plaintiff ultimately prevails on her claims, she will still need to show that equitable relief is the only way to remedy a specific type of injury suffered by herself or the class. However, she may be able to do so by, for example, arguing that injunctive relief is the only way to protect the class from future deceptive behavior. (Doc. No. 10 at ¶ 73 ("Plaintiff requests that this Court . . . enjoin Nine West from continuing these unfair practices . . . in the future. Otherwise, Plaintiff, Class members, and the broader public will be irreparably harmed and/or denied an effective and complete remedy.").) The Court

13

3:17-cv-01371-H-JLB

accordingly declines to dismiss Plaintiff's claims for equitable relief.

## Conclusion

The Court has serious doubts as to whether Nine West's price markings are actually misleading to a substantial portion of the public. However, the question of "whether a business practice is deceptive will usually be a question of fact not appropriate for decision on [a motion to dismiss]." <u>Williams</u>, 552 F.3d at 938. At this stage, Plaintiff has adequately pled plausible claims under the UCL, FAL, and CLRA. As a result, the Court denies Nine West's motion to dismiss.

**IT IS SO ORDERED.**

DATED: January 25, 2018

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT